1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
S.J., *a minor child by and through his parents* )
*S.H.J. and J.J.,*                        )        No. C04-1926RSL
                                          )
                                          )        ORDER AFFIRMING
                        Plaintiff,[1]     )        ADMINISTRATIVE DECISION
            v.                            )
                                          )
ISSAQUAH SCHOOL DISTRICT NO. 411,         )
*et al.,*                                 )
                                          )
                        Defendants.       )
_____)

## I.  INTRODUCTION

This matter comes before the Court on plaintiff's opening memorandum challenging an administrative law judge's ruling concerning S.J.'s right to a free accessible public education under the Individuals with Disabilities Education Act ("IDEA").  See Dkt ##46-47 (Plaintiff's Opening Memorandum).  For the reasons set forth below, the Court affirms the administrative ruling.

---

[1]  For the record, the Court emphasizes that based on the Complaint, this action is being pursued by a single "plaintiff," S.J.  See Dkt. #1.  Throughout the filings in this matter, both parties have erroneously alternated between references to "plaintiff" and "plaintiffs."  Compare Dkt. #46 ("Plaintiff") with Dkt. #66 ("Plaintiffs").

ORDER AFFIRMING
ADMINISTRATIVE DECISION

## II.  DISCUSSION

**A.    Background.**

S.J. is a minor child who attended school in the Issaquah School District No. 411 (the "District") from kindergarten through sixth grade.  S.J.'s parents removed him from the District for the 2002-2003 school year, his seventh grade year, and enrolled him in a school for special education students, the Children's Institute for Learning Differences at the New Heights School ("New Heights").  S.J. remained at New Heights through the 2002-2004 school years.

In March 2004, plaintiff filed a request for an administrative due process hearing alleging procedural and substantive violations of the IDEA.  Plaintiff sought reimbursement of tuition at New Heights for the 2002-2004 school years, compensatory education, and other relief.  A nine-day due process hearing was held in May and June of 2004 before Administrative Law Judge Janice Shave.  At the conclusion of the proceeding, Judge Shave issued a 52-page decision granting plaintiff some, but not all of the relief sought.  Plaintiff filed a Complaint with this Court on September 13, 2004.  See Dkt. #1 (Complaint).

A "puzzling procedural problem arises whenever the district court adjudicates administrative appeals, because the Federal Rules of Civil Procedure do not plainly speak to how such appeals should be handled. . . . [T]he procedure is in substance an appeal from an administrative determination, not a summary judgment."  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995).  Recognizing the unique procedural posture of this case, on January 10, 2007, the Court set a briefing schedule requiring that plaintiff file an opening memorandum (hereinafter "Memorandum" at Dkt. ##46-47), followed by defendants' response ("Response" at Dkt. #65) and concluding with plaintiff's reply ("Reply" at Dkt. #66).  See Dkt. #29.[2]  The administrative appeal was noted for the Court's consideration on June 15,

---

[2]  Following the Court's order establishing the briefing schedule, plaintiff moved to introduce new evidence.  See Dkt. ##43, 62.  On May 14, 2007, the Court denied plaintiff's request because, among

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -2-

2007, and therefore is ripe for review by the Court.  See Dkt. #57 at 2.

**B.     Analysis.**

The Court has jurisdiction over this matter pursuant to the IDEA, 20 U.S.C. § 1415(i)(2)(A), which states that "any party aggrieved by the findings and decision made [in the administrative due process hearing] shall have the right to bring a civil action . . . in a district court of the United States, without regard to the amount in controversy."  In this action, "the court – (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id. at § 1415(i)(2)(C).

The district court reviewing an IDEA due process hearing "gives particular deference where the hearing officer's administrative findings are 'thorough and careful.'"[3]  R.B. v. Napa Valley Unified Sch. Dist., __ F.3d __, 2007 WL 2028132, at *3 (9th Cir. July 16, 2007) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).  Mixed questions of fact and law are reviewed de novo, but when the question is primarily factual, a more deferential approach is appropriate.  Id. at *3 and n.1.  As plaintiff correctly acknowledges in his Reply, "[p]laintiff[] carr[ies] the burden of proof for this Complaint as the party challenging the administrative ruling."  See Reply at 2 (citing Ms. S. v. Vashon Island Sch. Dist., 337 F.3d 1115, 1127 (9th Cir. 2003) ("In the district court and on appellate review . . . the burden of proof is on the party challenging the administrative ruling.")).[4]

---

other things, the proposed additional evidence was not new nor was it unavailable during the administrative proceedings.  See Dkt. #64 (Order Denying Motions to Introduce New Evidence) at 3.

[3]  The Court notes that Judge Shave's 52-page decision, including her thorough and careful findings and well-reasoned conclusions, is commendable in this case given all of the hotly contested issues presented at the administrative hearing.

[4]  At the administrative hearing, defendants had the burden of proof.  See, e.g., RP 5190:22-24. In Schaffer v. Weast, 546 U.S. 49 (2005), decided after the administrative hearing, the Supreme Court clarified that the party seeking relief in the administrative hearing bears the burden of proof.  Id. at 535.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -3-

1   Although plaintiff's Complaint is not a model of clarity, the Court finds that the

2   Complaint raises seventeen separate claims relating to S.J.'s denial of a free appropriate public

3   education ("FAPE") under the IDEA.[5]  Plaintiff also claims that his rights under Washington

4   State law and the Washington Constitution, the United States Constitution, the Americans with

5   Disabilities Act, and the Rehabilitation Act of 1973 were violated because the Behavior Plan in

6   the January 11, 2002 IEP required S.J. to take medication or be removed from class or school.

7   See Dkt. #1 at ¶27.  Given the number of claims raised in this matter, the Court discusses each

8   of the seventeen IDEA claims and the non-IDEA claims separately, below.  But, before turning

9   to the merits of the claims, the Court first outlines the requirements of the IDEA.

10   The IDEA is designed "to ensure that all children with disabilities have available to them

11   a free appropriate public education that emphasizes special education and related services

12   designed to meet their unique needs and prepare them for further education, employment, and

13   independent living."  20 U.S.C. § 1400(d)(1)(A).  In reviewing a claim under the IDEA, the

14   court must examine a school district's procedural and substantive compliance with the IDEA.

15   See Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498-99 (9th Cir. 1996).  Procedurally, the

16   IDEA requires school districts to identify children with special education concerns and develop

17   for them an individual education program ("IEP") through an IEP team.  See 20 U.S.C. §

18   1414(d).  Substantively, the IDEA requires that the IEP provide the student with a FAPE.

19   The IDEA defines FAPE as:

20   special education and related services that – (A) have been provided at public
     expense, under public supervision and direction, and without charge; (B) meet the
21   standards of the State educational agency; (C) include an appropriate . . .
     secondary . . . school education in the State involved; and (D) are provided in

22

23   The burden applied in the administrative hearing, however, does not change the Court's review here
24   because plaintiff bears the burden of proof in this action.

25   [5]  In the Complaint, plaintiff did not tie any of the "Claims for Relief" to specific factual
     allegations.  Accordingly, the Court has reviewed the "Factual Allegations" contained in the Complaint to
26   ascertain the claims for relief under the IDEA.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -4-

conformity with the individualized education program required under section [20 U.S.C. § 1414(d)].

20 U.S.C. § 1401(9).   Despite this definition, the IDEA does not define what must be done substantively to provide a student with a FAPE.  "The leading case on the substantive requirements of the IDEA is Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982), where the Supreme Court held that [a] FAPE, under the IDEA's antecedent statute, the Education of the Handicapped Act, requires school districts only to provide a 'basic floor of opportunity' for disabled students and that it is enough that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'"  San Rafael Elementary Sch. Dist. v. Cal. Special Educ. Hearing Office, 482 F. Supp. 2d 1152, 1156 (N.D. Cal. 2007); see also Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1107 (9th Cir. 2007) (discussing Rowley).  In 2006, the Ninth Circuit in Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1031 (9th Cir. 2006), confirmed that the appropriate standard for determining whether an IEP provides a FAPE is whether it is "reasonably calculated to enable the child to receive educational benefits." Id.  (quotation marks and citation omitted).  Under these standards, the Court turns to plaintiff's IDEA claims.

**1.     Change from occupational therapy to direct consulting services.**

Plaintiff first claims that he was denied a FAPE under the IDEA because from September of 2000 to January 2001 he "was changed from direct OT [occupational therapy] services to direct consulting services."  See Dkt. #1 at ¶22.  Plaintiff failed to address this claim in both his Memorandum and Reply.  See Dkt. ##45-46, 66.

In her conclusions of law in the administrative due process proceeding below, Judge Shave determined that while "[t]he Parents assert the Student was denied a FAPE because he was not provided OT services while at Maywood[,] [t]he record supports the determination that while the Student might have benefitted from this related service, it was not necessary in order

to enable him to progress in the general curriculum and on his IEP goals." AR 45 at ¶27.[6]  Judge Shave reached this conclusion based on her extensive findings regarding plaintiff's occupational therapy.  See AR 35-37 at ¶¶148-157.  While the Court reviews Judge Shave's purely legal conclusions de novo, the findings concerning plaintiff's occupational therapy are "thorough and careful," and accordingly, this Court gives particular deference to them.[7]

"Loss . . . of a number and/or quality of therapy hours . . . may be regrettable, but the IDEA does not demand that any particular set or level of services be maintained for a student merely because they were previously provided to that student.  Rather, the IDEA demands only that the services provided constitute 'meaningful educational benefit.'"  Wagner v. Bd. of Educ. of Montgomery County, Md., 340 F. Supp. 2d 603, 616 (D. Md. 2004) (quoting Rowley, 458 U.S. at 192).  As Judge Shave found, the OT services at issue stem from a determination by Dana Fare, the District's occupational therapist, that plaintiff had difficulty with writing.  See AR 35 at ¶149; AR 2297 (noting that manuscript and cursive writing would not be addressed "as it is not impacting [S.J.'s] educational program.").  On January 1, 2000, Ms. Fare concluded that S.J.'s writing had improved to the point where only consultive OT services were required for the 2000-2001 school year. AR 2266.  Judge Shave found that "Ms. Fare used her professional judgment to reach the conclusion that the Student functioned acceptably in handwriting, even if it was less than perfect."  AR 35 at ¶149.  Mary Margaret Fry, a District OT therapist, also testified that at the time of the hearing, OT services (direct or consulting services) were not necessary for plaintiff to benefit from his educational program.  See RP 4198:20-24; Schoenbach

---

[6]  Throughout this Order, citation to exhibits and other documents from the administrative hearing is designated by the prefix "AR" followed by the record page number.  Citation to the hearing transcript is designated by the prefix "RP" followed by the record page number.

[7]  Although Judge Shave concluded that this claim was barred by the statue of limitations, she entered findings on the 2000-2001 OT services.  See AR 40 at ¶10 ("There was no delay in the accrual of the Parents' right to file for due process, therefore all claims for periods prior to the three years before the filing of the request for hearing (March 1, 2004) are barred by the statute of limitations.  This includes their claim for relief for the termination of OT services in 2000.").

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -6-

1  v. Dist. of Columbia, 309 F. Supp. 2d 71, 82 (D.D.C. 2004) ("A child's educational needs at the

2  time of trial may be relevant in determining the child's needs at the time of disputed events.")

3  (citing Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 588 (9th Cir. 1992)).  Based on Judge

4  Shave's findings and the evidence and testimony from the hearing, the Court denies plaintiff's

5  claim because he has not shown by a preponderance of the evidence that he was denied a FAPE

6  when he "was changed from direct OT services to direct consulting services."

7        **2.**      **End of OT services in January 2001.**

8        Plaintiff next claims that he was denied a FAPE under the IDEA when he was "exited

9  from OT services" on January 11, 2001.  See Dkt. #1 at ¶23.  Plaintiff failed to address this

10  claim in either the Memorandum or Reply.  See Dkt. ##45-46, 66.  Based on Judge Shave's

11  finding that "Ms. Fare used her professional judgment to reach the conclusion that the Student

12  functioned acceptably in handwriting, even if it was less than perfect," coupled with the Court's

13  conclusions in Section II.B.1 above, the Court denies plaintiff's claim because he has not shown

14  by a preponderance of the evidence that he was denied a FAPE when "exited from OT services"

15  on January 11, 2001.

16        **3.**      **Lack of Behavior Plan in the January 11, 2001 IEP.**

17        Plaintiff also claims that he was denied a FAPE under the IDEA because the January 11,

18  2001 IEP did not contain a Behavior Plan.  See Dkt. #1 at ¶25.  In the Memorandum, plaintiff

19  contends that "ALJ Shave did not address this issue but this Court should find a denial of

20  FAPE."  Memorandum at 17.  The Court finds, however, that this issue was not addressed at the

21  administrative hearing because plaintiff failed to raise it.  The lack of a Behavior Plan in the

22  January 11, 2001 IEP is not discussed in plaintiff's request for a due process hearing nor is it

23  listed in the 16 issues plaintiff identified for the hearing.  See AR 512-13.

24        The Court's review here is limited by issues raised in the administrative complaint.  In

25  County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1465 (9th Cir. 1996),

26  the Ninth Circuit concluded that the Court's jurisdiction under then 20 U.S.C. § 1415(e)(2), now

ORDER AFFIRMING
ADMINISTRATIVE DECISION         -7-

§ 1415(i)(2), was limited to issues raised in the administrative complaint. Id. ("Because Rosalind's complaint at the administrative hearing addressed only the right to residential placement, we conclude that the County is precluded from challenging the SED determination."); see Ga. State Dep't of Educ. v. Derrick C., 314 F.3d 545, 551 n.4 (11th Cir. 2002) ("When the IDEA was amended in 1997, § 1415(e)(2) became § 1415(i)(2)."); Dep't of Educ., State of Haw. v. Cari Rae S., 158 F. Supp. 2d 1190, 1195 (D. Haw. 2001) ("[A]lthough additional evidence in IDEA review proceedings is allowed, this does not authorize introducing entirely new issues that were not included in the original administrative complaint.") (citing County of San Diego, 93 F.3d at 1465). Additionally, a plaintiff alleging violation of the IDEA must generally exhaust administrative remedies before pursuing the claim in federal court. See Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1049-50 (9th Cir. 2002). The Ninth Circuit has held that this requirement is jurisdictional. Id. Plaintiff's claim here could have been redressed through IDEA's administrative procedure. See Kutasi v. Las Virgenes Unified Sch. Dist., __ F.3d __, 2007 WL 2050952, at *5 (9th Cir. July 19, 2007). Therefore, because plaintiff in the administrative hearing failed to raise the claim that a lack of a behavioral plan in the January 11, 2001 IEP denied S.J. a FAPE and did not exhaust his administrative remedies on this issue, the Court denies consideration of this claim for lack of jurisdiction.

For the record, however, this Court also denies this claim because it finds that the testimony of Barbara Raabe, S.J.'s special education teacher, shows that S.J.'s behavior before the implementation of the January 11, 2001 IEP did not necessitate a Behavior Plan. See RP 4794:22-4795:4; 4811:1-6.

### 4.    Development of January 2002 Behavior Plan.

Next, plaintiff claims that he was denied a FAPE under the IDEA because the Behavior Plan in the January 11, 2002 IEP was developed without a functional behavior assessment and did not include positive behavioral interventions, supports or strategies. See Dkt. #1 at ¶26; Memorandum at 17-19. In the Memorandum, plaintiff suggests that a functional behavior

1   assessment is a requirement for a FAPE.  See Memorandum at 17-19 (citing 20 U.S.C. §
2   1415(k), 34 C.F.R. § 300.520, and WAC 392-172-377).[8]  Under 20 U.S.C. § 1415, a student
3   shall receive a functional behavioral assessment when there has been a specific removal from a
4   current placement.  See, e.g., id. at § 1415(k)(1)(D)(ii).  A removal in placement did not occur in
5   this case.  Accordingly, the Court denies plaintiff's claim that he was denied a FAPE because he
6   did not receive a functional behavioral assessment.

7        As part of this claim, plaintiff also asserts that the Behavioral Plan did not include
8   positive behavioral interventions, supports and strategies as part of his IEP.  See Memorandum
9   at 18 (citing 20 U.S.C. §1414(d)(3)(B)(i), which states:  "in the case of a child whose behavior
10  impedes the child's learning or that of others, consider the use of positive behavioral
11  interventions and supports, and other strategies, to address that behavior[.]").  This contention is
12  contradicted by the record.  See AR 2078 (describing the "rewards" for meeting goals); RP
13  4560:25-4561:8 (recording Ms. Raabe's testimony that the behavioral plan included incentives
14  for meeting S.J.'s goals).  Accordingly, the Court finds that the IEP team considered the use of
15  positive behavioral interventions, supports and other strategies to address S.J.'s behavior and
16  therefore denies plaintiff's claim that he was denied a FAPE.  This ruling is consistent with
17  Judge Shave's broad conclusion that while "[t]he Parents allege the School District failed to
18  provide a FAPE when it proposed and signed the January 2002 behavior plan[,] [t]his position is
19  not adopted."  See AR 45 at ¶28.

20

21

22        [8]  Throughout the Memorandum, plaintiff repeatedly mis-cites stated authority.  For example, on
23  page 17 the Memorandum, plaintiff cites to 20 U.S.C. § 1415(k)(1)(B)(i) and 34 C.F.R. §
    300.520(b)(1)(i).  The cited sub-parts of these references, however, do not exist.  As another example,
24  the Court cannot determine the source of the emphasized quote on page 18 of the Memorandum because
    plaintiff cites to the same nonexistent sub-parts referenced above and to WAC 392-172-377, which does
25  not contain the quoted language.  Notably, 20 U.S.C. § 1415 also does not contain the quoted language,
    and neither does 34 C.F.R. § 300.520.  Plaintiff's puzzling citations have made the Court's review of the
26  claims in this matter unnecessarily difficult.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -9-

1

2

3

4

**5.** **The January 2002 Behavior Plan's medicine provision.**

Plaintiff also claims he was denied a FAPE under the IDEA because the Behavior Plan in the January 11, 2002 IEP required that he take medication or be removed from class or removed from school. See Dkt. #1 at ¶27; Memorandum at 35-37.

The January 2002 Behavior Plan provided the following behavioral goals: "To minimize explosive episodes [S.J.] will[:] 1. Take medication at school each day as prescribed by physician[; and] 2. Comply with adult requests after 1 reminder." AR 2097. The Behavior Plan also included rewards for meeting goals, including candy. Id. Plaintiff's claim relates to the "Consequences" section of the Behavior Plan, which states:

> If [S.J.] refuses to take medications or does not comply with adult request after 1 reminder any of the following will be the result:
> Removal to the Behavioral Learning Center
> Phone dad's cell phone [#]
> Phone mom's cell phone [#]
> Removal from school for the remainder of the day.

Id. In her decision, Judge Shave concluded that the January 2002 Behavioral Plan did not deny plaintiff a FAPE and "the School District did not act inappropriately when it proposed, and the Parents and physician agreed, that the Student would take already-prescribed medication at school." AR 45 at ¶¶28-29. While the Court reviews Judge Shave's legal conclusion de novo, the findings concerning the January 2002 Behavior Plan are "thorough and careful," and accordingly, this Court gives particular deference to the findings. See AR 7-9 at ¶¶17-24.

In the Memorandum, plaintiff asserts that a case from the District of New Hampshire holds that a FAPE "should not be predicated on the requirement to be medicated." See Memorandum at 36 (citing Valerie J. v. Derry Co-op Sch. Dist., 771 F. Supp. 483, 490 (D.N.H. 1991). Valerie J., does not support plaintiff's position, however, because the court determined that "[plaintiff's] right to a free appropriate public education could not be premised on the condition that he be medicated without his parents [sic] consent." Id. (emphasis added). The preponderance of the evidence does not show that S.J.'s parents did not consent to have S.J. take

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -10-

his medication at school.  See AR 2060 (agreement to allow the school to administer plaintiff's medication);[9] AR 2576 (Mother's deposition) at 77:6-8.

Plaintiff also contends in the Memorandum that 20 U.S.C. § 1412(a)(25)(A) directly forbids a school district from requiring a student to be medicated to attend school.  See Memorandum at 35-36.  However, § 1412(a)(25)(A) states:  "[t]he State educational agency shall prohibit State and local educational agency personnel from requiring a child to obtain a prescription for a substance covered by the Controlled Substances Act (21 U.S.C. 801 et seq.) as a condition of attending school[.]".[10]  Id. (emphasis added).  Here, S.J. already had the prescription and was taking the medication at home.  See RP 5175:5-21.  Additionally, § 1412(a)(25)(A) did not take effect until July 1, 2005, after the January 2002 the Behavior Plan was created.  Finally, as Judge Shave found:  "After adoption of the Behavior Plan in January of the Student's 6th grade year, the Student was never removed from school for failing to take his medication according to Behavior Plan requirements."  See AR 9 at ¶24.  In fact, the record shows that in the one instance where S.J. refused his medication, because it was difficult to swallow, S.J.'s choice was respected and no disciplinary action followed.  See AR 2037; RP 4287:14-4288:7.

Based on Judge Shave's findings, the testimony at the hearing, and the admitted exhibits, the Court denies plaintiff's claim because he has not shown by a preponderance of the evidence that the January 2002 Behavior Plan denied him a FAPE.

**6.    Attendance and work completion problems.**

Plaintiff claims that he was denied a FAPE under the IDEA because his January 11, 2002

---

[9]  Although the consent form dated January 1, 2002, AR 2096, does not have a parent's signature, undisputed testimony established that some of S.J.'s nursing records were misplaced during the archiving process, and S.J.'s mother testified that she gave the school authorization to give S.J. his medication.  See RP 4286:16-4287:7; AR 2576 at 77:6-8; AR 2060.

[10]  The Court has been unable to identify any cases interpreting this provision.

IEP did not address attendance and work completion problems.  See Dkt. #1 at ¶28.  On this

claim, Judge Shave found that the attendance and related work completion problems were

caused by S.J.'s mother:  "The Mother prefers to drive all the students to school, despite being

offered public transportation at no cost.  However, the Mother did not ensure that the students

arrived at school on time.  This attendance pattern preceded the 2000-2001 school year and

continued at least through the time of the filing of the due process hearing request, even after the

Student left public school and attended private school.  The Mother's explanation is that she is

not a morning person, and it is difficult for her to get the Student to school on time."  AR 7 at

¶12.  This finding is supported by the record.  See, e.g., AR 2571 at 57:18-25.  Judge Shave also

found that:  "During the Student's school years in the School District, the School District sent

periodic notices to the Parents of the Student's progress toward his IEP goals, and of his

progress in classes. . . .  Through his years in the School District, the School District also sent

notices and made telephone calls to the Parents regarding the Student's unacceptable

attendance."  AR 6 at ¶11; AR 1975; 2011-2031; 2036; 2038-2059; 2084-2095; 2122.

Furthermore, Judge Shave found that the "Parents did not provide information to the School

District about any cause for the Student's tardiness or absenteeism, other than the Mother's

general difficulty in getting all four of the family's children to school on time in the morning."

AR 7 at ¶14.    Based on these findings, Judge Shave concluded:  "The School District is not

responsible for the Parents' failure to ensure the Student was at school in order to benefit from

his education."  AR 44 at ¶25.

   The Court finds that this is not a case like the situation presented in Lamoine Sch. Comm.

v. Ms. Z, 353 F. Supp. 2d 18, 34 (D. Me. 2005), where the plaintiff's poor attendance record

had a clear connection to his disability.  Id. at 34, 41 (plaintiff's "poor attendance record appears

to have a clear connection to his emotional disability").    An IEP relates to a child's disability,

but S.J.'s attendance problems in this case were not caused by S.J.'s disability.  See 20 U.S.C. §

1414(d); RP 4848:22-25 ("Q.  Based on your understanding of the Student then and now, did or

do you have reason to believe that the Student's attendance was related to his disability.  A. No.") (Raabe testimony).

Judge Shave's findings concerning S.J.'s attendance and work completion are "thorough and careful," and accordingly, this Court gives particular deference to them.  The Court denies plaintiff's claim because he has not shown by a preponderance of the evidence that he was denied a FAPE because of any failure in the January 11, 2002 IEP to address poor attendance and accompanying work completion problems.[11]

### 7.    Deterioration of academic progress.

Next, plaintiff claims that he was denied a FAPE under the IDEA because the January 11, 2002 IEP was not reviewed or revised when his behavioral and academic progress deteriorated.  See Dkt. #1 at ¶29.  As clarified in the Memorandum, this claim is based on the testimony of Ms. Raabe, who plaintiff asserts "testified that the IEP was not working between January and May of 2002 due to attendance problems and lack of medication."  See Memorandum at 23 (citing RP 4822:19-24).  Plaintiff claims this testimony shows a "procedural flaw that denied S.J. a FAPE."  Id.  The testimony cited by plaintiff, however, does not support the claim.  At the hearing, Ms. Raabe initially testified that the January 2002 IEP did not need to be revised.  RP 4822:10-18.  She later explained that the Behavior Plan was not working between January and May "[b]ecause of attendance and lack of medication."  Id. at 14-24.  As the Court found above, S.J.'s attendance issue was unrelated to his disability.  And, as discussed above, plaintiff has contested the "medication requirement" in the January 2002 Behavior Plan.  Accordingly, the Court finds that plaintiff is estopped from claiming that problems due to a "lack of medication" should have been addressed in the January 2002 IEP.

The record also shows that by the end of the 2002, plaintiff was making progress

---

[11]  The Court also rejects plaintiff's argument on page 22 of the Memorandum suggesting that the School District violated RCW 28A.225.020.  As defendants correctly note, this section addresses a district's obligation to reduce unexcused absences.  See Response at 34.  The vast majority of S.J.'s absences, however, were excused.  See, e.g., AR 2455.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -13-

behaviorally and academically and was benefitting from the January 2002 IEP.  See, e.g., RP

4590:12-4593:12; AR 2027-2031.  As Judge Shave found, "[a]ccording to his special education

and general education teachers, [S.J.'s]  primary problems that year were medication

management and attendance, not behavior or academics."  AR 10 at ¶26.  Based on this and

other findings, Judge Shave concluded:  "[t]he Student made meaningful progress in both the

general curriculum and on his IEP goals and objectives. . . . The District met its obligation to the

Student."  AR 45 at ¶26.  For these reasons, the Court denies plaintiff's claim because he has not

shown by a preponderance of the evidence that he was denied a FAPE because of any failure to

revise the January 11, 2002 IEP.

### 8.    Program modifications and supports in the January 2002 IEP.

Plaintiff claims that he was denied a FAPE under the IDEA because his January 11, 2002

IEP did not include any program modifications or supports to appropriately access the general

education curriculum.  See Dkt. #1 at ¶30.  In the Memorandum, plaintiff clarifies this claim as

relating to the blank supplementary aids and services page in the IEP.  See Memorandum at 19-

20; AR 893; 2066.  The evidence shows, however, that the January 2002 IEP was implemented

by incorporating the January 2001 IEP's modifications.  See RP 4222:7-24; 4491:19-4492:5;

4849:8-20.  Courts have concluded that the failure to include required elements of an IEP within

the four-corners of the document does not invalidate the IEP as long as the parents and

administrators had all the required information.  See, e.g., Doe v. Defendant I, 898 F.2d 1186,

1190 (6th Cir. 1990) ("[T]o say that these technical deviations . . . render appellant's IEP invalid

is to exalt form over substance.").  Furthermore, as Judge Shave found, "[t]he Mother

telephoned Maywood a half hour after the [January 11, 2002 IEP] meeting was scheduled to

begin and explained that she had forgotten about it. . . .  The Mother agreed to have the IEP

mailed to her and to go over it by telephone with the School District. . . . [t]he Parents . . . did

not express disagreement with any of its terms."  AR 8 at ¶20.  The Court denies plaintiff's

claim because he has not shown by a preponderance of the evidence that he was denied a FAPE

because the IEP did not include modifications or supports to allow access the general education curriculum.

### 9.    Consideration of OT services in the January 11, 2002 IEP.

Plaintiff next claims that he was denied a FAPE under the IDEA because his January 11, 2002 IEP did not consider the need for OT services. See Dkt. #1 at ¶31. The Court finds that while plaintiff in the administrative hearing did not specifically contest the need for OT in the January 11, 2002 IEP, plaintiff's broad claim relating to the discontinuance of OT allows the Court to consider the issue. See AR 513 at ¶16 (raising the issue of "Was Student properly exited from Occupational Therapy services or has Student been denied OT services since September of 2000 by having these services improperly discontinued?"). However, despite his 62 pages of briefing, plaintiff failed to address the issue of OT services for the January 2002 IEP in either the Memorandum or Reply. See Memorandum and Reply. As a result, the Court has only the one sentence claim as set forth in paragraph 31 of the Complaint for consideration.

In her Conclusions of Law, Judge Shave concluded that while "[t]he Parents assert the Student was denied a FAPE because he was not provided OT services while at Maywood[,] [t]he record supports the determination that while the Student might have benefitted from this related service, it was not necessary in order to enable him to progress in the general curriculum and on his IEP goals." AR 45 at ¶27. Judge Shave reached this conclusion based on her extensive findings regarding plaintiff's occupational therapy. See AR 35-37 at ¶¶148-157. While the Court reviews Judge Shave's legal conclusion de novo, the findings concerning plaintiff's occupational therapy are "thorough and careful," and accordingly, this Court gives particular deference to the findings.

Based on Judge Shave's findings regarding the OT services, and plaintiff's failure to support his claim regarding OT services in the January 2002 IEP, plaintiff has not met his burden to show by a preponderance of the evidence that the January 11, 2002 IEP did not consider the need for OT.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                          -15-

**10.     Placement for S.J. as of January 11, 2003.**

Plaintiff claims that he was denied a FAPE under the IDEA because the District did not

have an appropriate placement as of January 11, 2003, the date the January 11, 2002 IEP

expired.  See Dkt. #1 at ¶32.  In the hearing below, Judge Shave concluded that at the beginning

of 2002-2003 school year, the placement offered by the district was appropriate:

> In the present case, it is determined above that the placement offered by the School
> District as of the end of the Student's 6th grade year, the 2001-2002 school year,
> was appropriate.  However, the Parents requested a new IEP meeting in August
> 2002, but before it was held, the Parents unilaterally enrolled the Student in a
> private school without first informing the IEP team they were rejecting the
> proposed placement and stating their specific concerns.

AR 47 at ¶31; AR 10 at ¶29 (finding that the "then-current IEP was still in effect and available

to implement at the start of the 2002-2003 school year[.]").  Because plaintiff did not not comply

with the 10 day notice rule in 20 U.S.C. § 1412(a)(1)(C)(iii), Judge Shave denied tuition

reimbursement for New Heights for the 2002-2003 school year.  AR 47 at ¶31.  Plaintiff did not

challenge this ruling in the Complaint.  See Dkt. #1.

After S.J. was enrolled in New Heights in September of 2002, the District and S.J.'s

parents agreed to hold an IEP meeting on October 3, 2002.  RP 3886:1-12; AR 1946.  Due to the

scheduling of private evaluations for S.J., the parents cancelled the October 3, 2002 IEP

meeting, and did not request a rescheduled meeting until late January 2003.  RP 5132:4-14;

3886:13-20; 3802:13-3803:14; AR 12 at ¶¶37-39.  The District issued a notice of the IEP

meeting to be held February 27, 2003.  AR 1925.  At this meeting, however, the Court finds that

plaintiff's parents did not request a new IEP, but rather only reimbursement for S.J.'s enrollment

at New Heights.  RP 3891:14-17 ("Q.  What were the parents asking for at this meeting?  A.

They were asking for – they were continuing to ask for support and reimbursement for the

Student's unilateral placement at New Heights School."); 4927:24-4929:21.

Given Judge Shave's thorough and careful findings regarding the 2002 IEP's

appropriateness and compliance with IDEA, and the Court's findings and conclusions above

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -16-

regarding the January 2002 IEP, coupled with the finding regarding the availability of the district to implement the January 2002 IEP in January of 2003, the Court concludes that plaintiff has not shown by a preponderance of the evidence that the District did not have an appropriate placement as of January 11, 2003.

**11.     Placement for S.J. at the beginning of the 2003-04 school year.**

Plaintiff also claims that he was denied a FAPE under the IDEA because the District did not have an appropriate placement at the beginning of the 2003-2004 school year.  See Dkt. #1 at ¶33.  In August 2003, S.J.'s parents requested a new IEP.  AR 748.  At the resulting September 8, 2003 IEP meeting, however, a representative from New Heights was not invited to attend.  See Dkt. #52 at ¶34.  As discussed in Section II.B.12 below, Judge Shave concluded that this shortcoming resulted in a procedural violation of IDEA and a denial of a FAPE for S.J. at the beginning of the 2003-2004 school year.  Also as discussed below, given defendants' absence of a challenge to this ruling, the Court need not reach the issue concerning whether the District had an appropriate placement for S.J. at the beginning of the 2003-2004 school year.

**12.     Failure to include S.J.'s New Heights teachers in September 2003 IEP team.**

Plaintiff claims that he was denied a FAPE under the IDEA because the September 8, 2003 IEP was procedurally and substantively flawed when it did not include the participation of S.J.'s current teachers or information on his current progress.   See Dkt. #1 at ¶34.  In their answer to plaintiff's Complaint, defendants "admit that persons attending S.J.'s September 8, 2003 IEP team meeting did not include his then-current private school teachers."  See Dkt. #52 at ¶34.  Because of the failure to include S.J.'s teachers from New Heights at the September 8, 2003 IEP meeting, Judge Shave concluded that S.J. was denied a FAPE:  "It is concluded that the School District's failure to include New Heights staff at the September 2003 . . . IEP meeting[] resulted in the denial of [a] FAPE."  AR 43 at ¶19.

Plaintiff  prevailed on this issue below.  Id.  Defendants did not appeal this ruling.  See Response at 13.  Defendants also did not file a counterclaim challenging the ruling below.  See

Dkt. #52 (Answer and Affirmative Defenses).[12]  To the contrary, in their "defenses and affirmative defenses," defendants assert that "[t]he Findings of Fact, Conclusions of Law and Order from the ALJ were correct in all material respects[.]").  See Dkt. #52 at ¶58.

In reaching her conclusion that the September 8, 2003 IEP meeting procedurally violated the IDEA and denied S.J. a FAPE,[13] Judge Shave relied on Shapiro v. Paradise Valley Unified Sch. Dist., 317 F.3d 1072 (9th Cir. 2003), stating that "[t]he Ninth Circuit Court of Appeals has held that a school district's failure to include a representative from a private school that a child is currently attending violates procedural mandates of the IDEA.  See AR 42 at ¶17.  Recently, however, the Ninth Circuit in R.B. v. Napa Valley Unified Sch. Dist. distinguished Shapiro and held that "after the 1997 amendments, the IDEA no longer requires the presence of the child's current regular education teacher on the IEP team."  Napa Valley, 2007 WL 2028132, at *5. While the Ninth Circuit held that the IDEA does not require participation of the child's current special education on the IEP team, the Court held that it does "require a special education teacher who has actually taught the student."  Id. at *5-6.

In this case, S.J.'s special education teacher from 2001-2002, Barbara Raabe, was on the IEP team at the September 9, 2003 IEP meeting.  See AR 19 at ¶68 (listing participants at January 9, 2003 meeting); AR 1805; RP 4542:6:4546:20.  Accordingly, based on the Ninth Circuit's recent authority, it might well be the case that there was no IDEA procedural violation at the September 9, 2003 IEP meeting caused by the absence of a New Heights participant. However, the Court does not disturb the ruling below because defendants have explicitly not challenged it.

---

[12]  A counterclaim was the proper procedural vehicle through which defendants could have challenged the ruling below.  See, e.g., Katherine G. v. Kentfield Sch. Dist., 261 F. Supp. 2d 1159, 1185 (N.D. Cal. 2003).

[13]  Although not all procedural flaws are a per se denial of a FAPE, the Court in Shapiro concluded that the failure to include plaintiff's private school representative at the IEP meeting resulted in a loss of educational opportunity.  Shapiro, 317 F.3d at 1079.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                -18-

**13.    Failure to include S.J.'s New Heights teachers or current information in the December 2003 re-evaluation.**

Plaintiff claims that he was denied a FAPE under the IDEA because the December 13, 2003 re-evaluation was procedurally and substantively flawed when it did not include the participation of S.J.'s current teachers or information on his current progress. See Dkt. #1 at ¶35. In the Memorandum, plaintiff contends that Judge Shave "did not make any conclusion about the deficiencies of this December 2003 re-evaluation and the resultant impact on a FAPE for S.J." See Memorandum at 25. The Court finds, however, that this claim was not addressed at the administrative hearing because plaintiff failed to raise it. Accordingly, for the reasons set forth in Section II.B.3 above, the Court denies consideration of this claim.

Furthermore, given the Court's rulings above in Section II.B.12, plaintiff's claim regarding the December 2003 re-evaluation is moot. See, e.g., Lauren W. v. DeFlaminis, 480 F.3d 259, 265, 278 (3d Cir. 2007) (affirming district court's June 3, 2005 order determining that a claim under 20 U.S.C. § 1415 was moot because the court already had granted the student the relief she could obtain on that count). Finally, as discussed below in Section II.B.17 and as found by Judge Shave, the March 30, 2004 IEP was procedurally proper and substantively provided a FAPE to S.J. See AR 23-24 at ¶¶84-85; AR 48 at ¶37.

**14.    Consideration of S.J.'s involvement and progress in general education curriculum.**

Plaintiff claims that he was denied a FAPE under the IDEA because the December 12, 2003 re-evaluation did not consider how he was to be involved in and progress in the general education curriculum. See Dkt. #1 at ¶36. Although plaintiff contends that "ALJ made no findings or conclusions on this issue," the Court finds that this is the result of plaintiff's failure to raise this claim in the administrative hearing. Accordingly, for the reasons set forth above in Section II.B.13 above, the Court denies consideration of this claim.

Furthermore, given the Court's rulings in Section II.B.12, plaintiff's claim regarding the December 2003 re-evaluation is moot. See, e.g., Lauren W., 480 F.3d at 278. Finally, as

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -19-

discussed below in Section II.B.17 and as found by Judge Shave, the March 30, 2004 IEP was procedurally proper and substantively provided a FAPE to S.J.  <u>See</u> AR 23-24 at ¶¶84-85; AR 48 at ¶37.

**15.   Failure to include S.J.'s New Heights teachers in January 2004 IEP team.**

Plaintiff also claims that he was denied a FAPE under the IDEA because the January 9, 2004 IEP was procedurally and substantively flawed when it did not include the participation of his current teachers or information on his current progress.  <u>See</u> Dkt. #1 at ¶37.  In their answer to plaintiff's Complaint, defendants "admit that persons attending S.J.'s January 9, 2004 IEP team meeting did not include his then-current private school teachers."  <u>See</u> Dkt. #52 at ¶37. Because of the failure to include S.J.'s teachers from New Heights at the January 9, 2004 IEP meeting, Judge Shave concluded that S.J. was denied a FAPE:  "It is concluded that the School District's failure to include New Heights staff at the . . . January 2004 IEP meeting[] resulted in the denial of a FAPE."  AR 43 at ¶19.

For the reasons discussed in Section II.B.12, there may not have been any violation of IDEA simply because S.J.'s teacher from New Heights was not part of the IEP team on January 9, 2004.  However, unlike at the September 2003 IEP meeting, the record does not show that there was "a special education teacher who has actually taught the student" as part of the January 9, 2004 IEP team.  <u>See</u> AR 1710 (January 9, 2004 IEP meeting attendance sheet);  <u>Napa Valley</u>, 2007 WL 2028132 at *5-6.  This was a procedural violation of the IDEA.  <u>Id.</u>

"If the IEP team is improperly constituted, the reviewing court is ill-situated to know what the IEP would look like if the school district had included all the required participants on the IEP team."  <u>Id.</u> at *7.  The Court does not need to speculate about this issue here, however, because Judge Shave concluded S.J. was denied a FAPE based on the procedural violation of the composition of the IEP team.  AR 43 at ¶19.   Plaintiff prevailed on this issue below, and defendants did not appeal this ruling or file a counterclaim.  <u>See</u> Response at 15; Dkt. #52. Accordingly, the Court does not disturb Judge Shave's ruling on this issue.

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -20-

**16.     Whether the January IEP provided the least restrictive environment for S.J.**

Plaintiff claims that he was denied a FAPE under the IDEA because the program described in the January 9, 2004 IEP was not the least restrictive environment.  See Dkt. #1 at ¶38.  Given the Court's conclusion in Section II.B.15 above, the Court does not substantively address whether the January 9, 2004 IEP provided the least restrictive environment because plaintiff already prevailed on the claim that the January 9, 2004 denied him a FAPE due to a procedural IDEA violation, and defendants did not challenge this ruling.

**17.     March 30, 2004 IEP.**

Finally, plaintiff claims that he was denied a FAPE under the IDEA because in the March 30, 2004 IEP meeting, the January 9, 2004 IEP was offered by the District, but no new IEP was developed.  See Dkt. #1 at ¶39.  The issue here is:  (a) whether the procedural violation concerning the composition of the team for the January 9, 2004 IEP was cured by the March 30, 2004 IEP; and (b) whether the March 30, 2004 IEP substantively provided S.J. a FAPE.

Turning first to the procedural matter, Judge Shave below concluded that the March 30, 2004 demonstrated procedural compliance with the IDEA.  See AR 50 at ¶46.  This conclusion is supported by Judge Shave's thorough and careful findings regarding the composition of the March 2004 IEP team and the evidence in the record.  See AR 24 at ¶87; AR 1415 (listing the participants at the March 30, 2004 IEP meeting).  Accordingly, the Court finds that the procedural issue regarding the composition of the IEP team was cured in March 2004.[14] Furthermore, plaintiff has not shown by a preponderance of the evidence that there were any other procedural concerns with the March 30, 2004 IEP.  See Memorandum at 29-30.

Judge Shave also concluded that the March 30, 2004 IEP substantively offered S.J. a FAPE.  AR 48 at ¶¶37-40.  This conclusion was based on Judge Shave's thorough and careful findings regarding whether the March 30, IEP was reasonably calculated to enable S.J. to

---

[14]  The March 2004 IEP team included S.J.'s special education teacher from the 2001-2002 school year, Barbara Raabe.  AR 1415.

receive educational benefits.  See, e.g., AR 24-25 at ¶¶87-89.

The March 30, 2004 IEP is set forth at AR 1384-1422.  As Judge Shave found below, and the Court adopts here:

> The IEP included the following:  individualized instruction in the areas of math, broad written language [skills], reading comprehension, social/emotional/behavior [responses], prevocational [aptitudes and interests], and communication.  It includes supplementary aids and services in the areas of individual and family counseling sessions, access to computers or word processors in the classroom, adjusted length of assignments, access to written notes, extended time for tests taken in supportive environment, use of a calculator when allowed at times [when] use of the calculator will not impede acquisition of learning skills, OT consultation with school, updated functional behavioral assessment and behavior improvement plan, and a transition plan for incremental inclusion into a less restrictive environment.  It included direct SLP [Speech/Language Pathology] services for 30 minutes each week and 30 minutes of consultation and milieu support[.]

AR at 25 ¶89.

Reviewing the March 30, 2004 IEP, the Court finds that it was reasonably calculated to provide S.J. with a FAPE.   It was "designed to meet [S.J.'s] unique needs," and it was "supported by such services as are necessary to permit [S.J.] 'to benefit' from the instruction," thereby providing him with a "basic floor of opportunity" so that S.J. had meaningful access to a FAPE.  Rowley, 458 U.S. at 188-89, 201.  The Court, therefore, affirms Judge Shave's determination that the March 30, 2004 provided S.J. with a FAPE.

## C.    Non-IDEA claims.

In paragraph 27 of the Complaint, plaintiff claims that:

> S.J.'s Behavior Plan as included in his January 11, 2002 IEP required S.J. to take medication or be removed from class or removed from school, and this denied S.J. his right to a FAPE, as well as violated Washington state law, the Washington state constitution, the United States Constitution, the Amercan's [sic] with Disabilities Act, and the Rehabilitation Act of 1973.

Dkt. #1 at ¶27.  The Court addressed plaintiff's claim relating to a FAPE in Section II.B.5 above.  The Court turns now to plaintiff's claim that the January 2002 Behavior Plan violated his rights under Washington state law.

//

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -22-

Under RCW 28A.210.260:

> Public school districts . . . may provide for the administration of oral medication of any nature to students who are in the custody of the school district or school at the time of administration . . . subject to the following conditions: . . . (3) The public school district . . . is in receipt of a written, current and unexpired request from a parent . . . to administer the medication to the student; [and] (4) . . . is in receipt of . . . [a] request from a licensed health professional prescribing . . . the medication . . . and . . . instructions . . . prescribing . . . medication to students who require medication for more than fifteen consecutive work days[.]

Plaintiff has not shown that the District failed to comply with this section. To the contrary, and as discussed in Section II.B.5 above, the District had a written request from S.J.'s parents as required by § 28A.210.260(3) and had a request and prescription from S.J.'s health care professional as required by § 28A.210.260(4). See AR 2060; section II.B.5, supra. By substantially complying with RCW 28A.210.260, defendants are immune for liability in this case under RCW 28.210.270, which states in relevant part:

> In the event a school employee administers oral medication to a student pursuant to RCW 28A.210.260 . . . and the . . . conditions of RCW 28A.210.260 have been substantially complied with, then the employee, [and] the employee's school district . . . shall not be liable in any criminal action or for civil damages in their individual or marital or governmental or corporate or other capacities as a result of the administration of the medication.

Based on the broad and unequivocal immunity provided by this section, defendants are immune from liability and therefore plaintiff's state law claim is dismissed.[15]

Next, plaintiff claims that the January 2002 Behavior Plan violated his rights under the Washington Constitution and the Due Process Clause of the United States Constitution. See

---

[15]  Plaintiff asserts for the first time in the Memorandum that under RCW 71.34.530 minors thirteen years of age and over may refuse to take medication, and that the 2002 Behavior Plan violated this statute. The statute, however, expressly states that "Any minor thirteen years of older may request and receive outpatient treatment without the consent of the minor's parent." Id. (emphasis added). It does not discuss a minor's right to refuse medication or treatment as plaintiff contends. And, in any event, as discussed below, there is no evidence showing that S.J. was ever "forced to comply" when he refused to take his medication. See Memorandum at 41. To the contrary, the evidence shows that S.J. refused his medication only once and his choice was respected and did not result in any negative consequences. See Section II.B.5, supra.

ORDER AFFIRMING
ADMINISTRATIVE DECISION          -23-

1   Memorandum at 37-40.  These claims fail, however, because there is no evidence that plaintiff's

2   "right to an education" or S.H.J.'s and J.J.'s right to make decisions concerning S.J. was denied

3   by the 2002 Behavior Plan.  Id. at 40.  Judge Shave concluded that a "review of the record

4   supports the determination that the School District did not act inappropriately when it proposed,

5   and the Parents and physician agreed, that the Student would take already-prescribed medication

6   at school. . . . And finally, there is no evidence that the School District ever refused to allow the

7   Student to school or to class because of his failure to take his medication."  AR 45 at ¶29.  This

8   conclusion is supported by Judge Shave's thorough and careful findings regarding the January

9   2002 Behavior Plan.  AR 7-9 at ¶¶16-24.  Accordingly, plaintiff has failed to show by a

10  preponderance of the evidence that rights under the Washington Constitution and United States

11  Constitution were violated.

12          Finally, plaintiff contends that the January 2002 Behavior Plan was discriminatory under

13  § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with

14  Disabilities Act ("ADA"), 42 U.S.C. § 12132.  See Memorandum at 46; Dkt. #1 at ¶27.  To

15  support these claims, plaintiff alleges, without any evidentiary foundation, that "the behavior

16  plan, requiring S.J. to be medicated is discriminatory."  Memorandum at 43.  This solitary

17  allegation is insufficient to support a claim that defendants discriminated against S.J. under

18  either § 504 or Title II of the ADA.

19          To establish a prima facie case of discrimination under § 504, a plaintiff "must show (1)

20  he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he

21  was denied the benefits of the program solely by reason of his disability; and (4) the program

22  receives federal financial assistance."  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th

23  Cir. 2001).  To prove a violation of Title II of the ADA, "a plaintiff must show:  (1) he is a

24  'qualified individual with a disability'; (2) he was either excluded from participation in or

25  denied the benefits of a public entity's services, programs, or activities, or was otherwise

26  discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -24-

1    discrimination was by reason of his disability." Id.

2         Under these elements, plaintiff has failed to support a prima facie case of discrimination

3    under either § 504 or Title II of the ADA because, among other things, plaintiff has not shown

4    that 2002 Behavior Plan denied S.J. of any benefits as a result of his disability.  There is no

5    evidence that S.J. was removed from his program under the Behavior Plan.  To the contrary, the

6    one time S.J. refused to take his medicine there were no consequences.  Accordingly, plaintiff's

7    § 504 and ADA claims are denied.

8    **D.    Attorney's Fees.**

9         Plaintiff requests attorney's fees and costs under the IDEA as the prevailing party in this

10   action and the administrative hearing below.  See Memorandum at 43; Dkt. #1 at 10.

11   Defendants oppose an award of attorney's fees and costs because they assert that plaintiff was

12   not the prevailing party below, and in their response they "reserve[d] for post-decision briefing

13   all other arguments concerning why Plaintiff[] [is not] entitled to fees."  Response at 50.

14        Under the IDEA, a court "may award reasonable attorneys' fees as part of the costs . . . to

15   a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B).

16   The Ninth Circuit defines the "prevailing party" as the party that succeeds:

17        on any significant issue in litigation which achieves some of the benefit the parties
          sought in bringing the suit.  Such success results in a material alteration of the
18        legal relationship of the parties in a manner which Congress sought to promote in
          the fee statute.  Where the plaintiff's success on a legal claim can be characterized
19        as purely technical or de minimus, the plaintiff cannot claim fees as the prevailing
          party.  There must be a causal link between the litigation brought and the outcome
20        gained.

21   Parents of Student W. V. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir. 1998)

22   (quotations and citations omitted).

23        Here, Judge Shave concluded that S.J. was denied a FAPE between September 2003 and

24   January 2004 because of procedural violations in the September 2003 and January 2004 IEPs.

25   See AR 43 at ¶19; sections II.B.12 and 15, supra.  The Court finds that plaintiff's success in

26   recovering the cost of the New Heights tuition for September 2003 to September 2004 for this

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -25-

1  period results in a material alteration of the legal relationship of the parties and cannot be

2  characterized as purely technical or de minimus.

3      Furthermore, in Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025 (9th Cir. 2006),

4  as part of the opinion reversing the district court's denial of an attorney's fee award, the Ninth

5  Circuit stated:  "[t]he determination by the Hearing Officer and the district court that [the

6  student] was denied a free and appropriate public education for the 2001-2002 extended school

7  year and for September 2002 through November 2002 – even setting aside the other issues on

8  which Appellants prevailed – is the most significant of successes possible under the Individuals

9  with Disabilities Education Act."  Id. at 1036 (emphasis added).  After this decision, the Ninth

10  Circuit suggested that a denial of a FAPE alone may be dispositive for purposes of prevailing

11  party status under the IDEA to support an award of attorney's fees.  See Parent V.S. v. Los

12  Gatos-Saratoga Joint Union High Sch. Dist., 484 F.3d 1230, 1234 n.3 (9th Cir. 2007) ("This

13  determination alone might well be dispositive . . . given the statement [in Park quoted above]

14  that the determination regarding a denial of FAPE alone would be sufficient to confer prevailing

15  party status[.]") (emphasis in original).

16      Based on this authority, and the Court's findings above, the Court concludes that plaintiff

17  was the prevailing party in the administrative proceeding below.  However, based on the Court's

18  ruling here, in this action plaintiff did not obtain any benefit beyond what was obtained in the

19  administrative proceeding.  Accordingly, the Court finds that while plaintiff is entitled to recover

20  the portion of the fees he incurred at the administrative hearing on issues where he prevailed,

21  S.J. is not entitled to the fees incurred in this action.  Based on this ruling, plaintiff shall, within

22  20 days from the date of this order, submit an application for fees not exceed 12 pages,

23  excluding exhibits and declarations.  Defendants may file an opposition to this application, not

24  to exceed 12 pages, excluding exhibits and declarations, with 10 days from the date of plaintiff's

25  application.  No other filings shall be permitted.

26  //

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -26-

### III.  CONCLUSION

For all of the foregoing reasons, the Court AFFIRMS Administrative Law Judge Shave's decision and dismisses plaintiff's Complaint.  The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.  In accordance with the terms of this Order, the Court will consider plaintiff's post-judgment application for fees.

DATED this 12th day of September, 2007.


*Robert S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER AFFIRMING
ADMINISTRATIVE DECISION                    -27-